COMMONWEALTH MUTUAL FIRE INSURANCE COMPANY *vs.*
FAIRBANK CANNING COMPANY & others.

Suffolk. November 17, 1898. — March 31, 1899.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Fire Insurance — Agency — Locus Contractus — Validity of Contract.*

If an insurance broker in another State has been requested by the manager of an insurance company here to forward to it applications for insurance, and has done so, and policies have been issued on such applications to persons residing in the other State on property situated there, this does not constitute such broker the agent of the company.

A person applied to a broker in another State for insurance on property there, without naming any company. Thereupon the broker applied to a company here, but before forwarding the application agreed with the owner upon all the terms and the rate at which the policy should be written, not as binding the company, but as fixing in the interests of the owner terms for communication to the company and for its acceptance if it saw fit to accept them. The application was received here by the company and was accepted, and a policy was written, dated and executed by the proper officers here in accordance with the terms of the application, and sent by mail to the broker, who delivered it to the insured in the other State. *Held,* that the policy must be regarded as a Massachusetts contract; and that whether the broker was acting in violation of the laws of the other State in anything that he did could not affect the validity of the contract.

CONTRACT, to recover the amount of eight assessments upon the defendants as policy holders in the plaintiff corporation. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, upon agreed facts, in substance as follows.

The plaintiff was a mutual fire insurance company organized under the laws of this Commonwealth, and was authorized by statute to make insurance upon property located in any part of the United States or Canada. The defendants are residents of Illinois.

Prior to January 1, 1895, the plaintiff issued eight policies of insurance to the defendants, on property situated in Illinois, in which State the plaintiff was prohibited from transacting business without complying with certain provisions of the statutes

of that State, with which it did not comply. On March 19, 1895, the plaintiff was enjoined by this court from doing further business, and subsequently a receiver was appointed. On July 19, 1895, a petition was filed in this court by the president of the plaintiff, praying that the court would examine an assessment previously voted by the directors of the company and matters connected therewith, and would ratify the assessment with such amendments as might be necessary. Upon this petition an order of notice was issued, returnable in three weeks, and published as therein directed. At the hearing upon the petition, on August 23, 1895, the application was referred to an auditor, who was directed to appoint a time and place to hear all parties in the matter of the assessment, and to give personal notice thereof in writing to the insurance commissioner, and through the post office or by publication, as he deemed practicable, to all parties liable to such assessment, and to report upon the correctness of the assessment and all matters connected therewith. Thereupon due notice was given by the auditor as directed, hearings were had, and a report was made by him. Whereupon, after due notice to all parties in interest, giving them an opportunity to be heard, this court, by a decree of March 5, 1896, among other things, ordered an assessment of $250,000, and directed the officers of the company to vote the same in legal form, which the directors proceeded to do.

Afterwards, on March 25, 1896, the court confirmed the assessment of $250,000, which was subsequently made up in detail against the different policy holders of the company subject to assessment; and by a decree dated December 9, 1896, the assessment was ratified, confirmed, and established as computed and made up upon the persons and for the amounts as appeared in the schedules annexed to the decree. By such schedules it appeared that the defendants were assessed, on eight different policies, the total sum of $332.06. The decrees ordering and confirming the assessment were made after the usual publication of notices as directed by the court. Written notices of the assessments were duly sent to the defendants on June 30, 1896, demanding payment thereof. The office of the plaintiff was in Boston, where it did its business, and it had no office or agent in the State of Illinois, and none outside of Massachusetts except in the State

of North Carolina, unless it appears from the agreed facts that it had an agent in Illinois, and there did business.

Blake and Taylor were the managers of the plaintiff, receiving for their services a certain per cent of the gross receipts, from which they paid all expenses.   E. T. Marshall and Company were insurance brokers in Chicago.   Before any of these policies issued, and while Blake and Taylor were the general managers of the plaintiff, they solicited Marshall and Company to forward applications for insurance to the plaintiff, and agreed to pay them a commission on the premiums of all policies issued by the plaintiff on such applications.   The plaintiff issued many policies to residents of Illinois upon property there situate, upon application of Marshall and Company.

The defendants, wishing insurance upon certain of their property in Chicago, notified Marshall and Company, who thereupon made application to the plaintiff by mail for insurance for the defendants upon properties covered by the policies in question. Before forwarding the applications in each case, Marshall and Company and the defendants agreed upon all the terms, and the rate at which the policies should be written, if the applications were accepted.   Blake and Taylor had an open account with Marshall and Company, and in this account the latter was charged with the premiums upon all the policies issued and was credited with a commission on all such premiums, which were paid by Blake and Taylor out of the commission which they received from the plaintiff for their services as managers.   When the applications were received in Boston by the plaintiff from Marshall and Company, they were acted upon and accepted, and policies were written, dated and executed by the proper officers in Boston in accordance with the terms of the applications, and sent by mail to Marshall and Company, to whom the premiums were then charged by Blake and Taylor.   Marshall and Company subsequently delivered the policies to the defendants in Chicago, having first pasted on them a sticker on which were the words " Marshall & Co., Insurance, 210 La Salle St., Chicago." Marshall and Company made no charge to the defendants for services, and the defendants have never paid them for services in these matters, but paid them in Chicago the amount of the premiums.   The defendants did not appear before the auditor or

the court at any of the hearings on the petitions for the ratification of the assessment.

*W. B. French,* for the defendants.

*E. S. Fellows,* for the plaintiff.

MORTON, J. So far as appears, Marshall and Company had no authority to act for or to bind the plaintiff. They were insurance brokers, who had been requested by Blake and Company to forward to the plaintiff applications for insurance, and had done so, and policies had been issued on such applications to persons residing in Illinois on property situated there. This did not constitute them agents of the plaintiff any more than the fact that Blake and Company allowed them a part of their commissions and had an open account with them constituted them partners of Blake and Company. If they were the agents of any one, they would seem to have been the agents of the parties for whom they made the applications for insurance.

In this case the defendants applied to Marshall and Company for insurance on certain property in Chicago without naming any company so far as appears. Thereupon Marshall and Company made application to the plaintiff; but before forwarding the applications, they agreed with the defendants upon all the terms and the rate at which the policies should be written, not as binding the plaintiff, but as fixing in the interests of the defendants terms for communication to the plaintiff, and for its acceptance if it saw fit to accept them. It was for the plaintiff to say whether it would accept these terms or not. Till it did accept them, there clearly was no contract. The applications were received in Boston by the plaintiff, and " were acted upon and accepted, and policies were written, dated and executed by the proper officers in Boston in accordance with the terms of the applications, and sent by mail to Marshall and Company," who delivered them to the defendants in Chicago. The contracts were to be performed here, and it seems to us that they were completed here, and that the policies must be regarded as Massachusetts contracts. There is no question that they are valid here. *Commonwealth Ins. Co.* v. *Wood,* 171 Mass. 484. *Commonwealth Ins. Co.* v. *Knabe Manuf. Co.* 171 Mass. 265, and cases cited. Whether Marshall and Company were acting in violation of the laws of Illinois in anything that they did cannot affect the

validity of contracts made here and to be performed here between the plaintiff and the defendants. See *Pratt* v. *Burdon*, 168 Mass. 596. The case of *Roche* v. *Ladd*, 1 Allen, 436, on which the defendants rely, is clearly distinguishable. There was evidence that Brewster, through whom the policies were procured, was acting here as agent of the company in violation of law.

*Judgment affirmed.*