7985.  BARFIELD MUSIC HOUSE *v.* HARRIS.

1. The brief for the plaintiff in error was filed within the time limited by the order under which the case was heard, and failure to serve the brief as required by the rule of court is not ground for dismissal.  Civil Code of 1910, § 6182; *Roberts* v. *Roberts*, 115 *Ga.* 259 (2), 266 (41 S. E. 616, 90 Am. St. R. 108) ; *Seaboard Air-Line Ry.* v. *Peeples*, 9 *Ga. App.* 477 (71 S. E. 758).

2. The fourth ground of the motion for a new trial, wherein it is complained that the defendant was allowed to prove, over the objection of the plaintiff, that the musical instrument sued for was to be used in the operation of a dance hall in connection with a lewd house, although there was nothing in the plea and answer to authorize such testimony, will not be considered by this court, for the reason that this ground of the motion is in no wise urged in the brief of counsel for the plaintiff, and it must therefore be treated as abandoned.  The mere statement in the brief that the plaintiff in error insists that a new trial should be granted for each and every one of the reasons assigned in his original and amended motion for a new trial is not sufficient to change the rule. *James* v. *Boyett*, 19 *Ga. App.* 157 (91 S. E. 219) ; *Youmans* v. *Moore*, 11 *Ga. App.* 66 (74 S. E. 710) ; *Muse* v. *Hall*, 18 *Ga. App.* 651 (90 S. E. 222).

3. Under the special facts in this case, it was error, after awarding a nonsuit, to permit the defendant to adduce evidence as to the value of the property sued for, and to enter judgment in the amount so found against the plaintiff and his sureties on the bail-trover bond executed by them. Under the facts and circumstances involved, the court should have restored to the defendant the possession of the property held by the plaintiff under the bond, of which tender was made, in order that it might, as near as possible, leave the parties where it found them.

DECIDED MAY 3, 1917.

Trover; from city court of Valdosta—Judge Cranford. November 10, 1916.

*James M. Johnson,* for plaintiff.

*J. P. Knight, Dan R. Bruce,* for defendant.

JENKINS, J. The rulings stated in the first and second head-notes do not require elaboration.

This is an action in bail-trover, for the recovery of an electrical musical instrument, sold by the plaintiff to the defendant under a contract in which title to the instrument was retained in the vendor until payment of the purchase price. It was shown that the plaintiff knew, at the time the instrument was sold, that it was intended to be used by the defendant in a lewd house for the purpose of attracting men thereto; and when the case was formerly before this court (*Harris* v. *Barfield Music House,* 18 *Ga. App.* 444, 89 S. E. 592), it was held that as the contract was founded upon an immoral and illegal consideration, neither party could enforce it, and that the judgment obtained by the plaintiff should be set aside. It now appears that the defendant had failed to give bond and security as provided for by the Civil Code (1910), § 5151, and that the plaintiff had thereupon proceeded under § 5152, to enter into such recognizance, and had thus received back from the levying officer the property sued for. The second trial of the case resulted in a nonsuit, whereupon the defendant was allowed, over objection of the plaintiff, to adduce evidence before the jury solely for the purpose of determining the value of the property at the time the plaintiff's bond was given; and, after a verdict finding such value to be $500, the court entered up judgment in that amount in favor of the defendant, on the bond given by plaintiff and his sureties. The plaintiff now excepts to this procedure, and contends that since the original contract has been determined to be void and non-enforceable on the ground that the consideration of the contract was contra bonos mores, it is not possible to support the verdict ren-

dered, which it is contended was based thereon; that the only possible direction to the case, permitted to the court below, was to dismiss whatever proceedings were pending and to leave the parties where it found them. It is further shown that at the trial the property was tendered back to the plaintiff in order that this might be done.

There is no question that, as a general proposition, the trial judge followed, in his procedure, the correct rules of law laid down by the decisions; and counsel for the defendant has given us in his brief a clear statement of these rules. In *Marshall* v. *Livingston,* 77 *Ga.* 21, the court said: "Where an action of trover was brought and bail process was sued out, and upon the failure of the defendant to give the bond required, the plaintiff gave bond and security, and the property was delivered to him, if he voluntarily dismissed his action of trover, this amounted in law to a judgment of restitution, and ipso facto, upon such dismissal, entitled the defendant to a writ of restitution, or, where it was impossible to restore the subject of the action in kind, to a writ of fieri facias for the value thereof. Where the plaintiff gives bond and takes the property, this carries with it all the liabilities and remedies to which the defendant would have been subjected in case he was cast in the suit, or set up no defense or abandoned it when made.". See also: *Lauchheimer* v. *Jacobs,* 126 *Ga.* 261 (5), 268 (55 S. E. 55) ; *Smith* v. *Adams,* 79 *Ga.* 802 (5 S. E. 242) ; *Trammell* v. *Georgia Engineering &c. Co.,* 8 *Ga. App.* 501 (69 S. E. 921). "After a plaintiff in bail-trover is nonsuited, the defendant is entitled to judgment on the bond given by the plaintiff to acquire possession of the property under the bail process according to" sections 5151 et seq. of the Civil Code (1910). *Thomas* v. *Price,* 88 *Ga.* 533 (15 S. E. 11). See also *Block* v. *Tinsley,* 95 *Ga.* 436 (22 S. E. 672) ; *Petty* v. *Piedmont Fertilizer Co.,* 146 *Ga.* 149 (90 S. E. 966). In some of the earlier cases, including *Marshall* v. *Livingston,* supra, it was suggested that the sworn value placed upon the property in the plaintiff's affidavit appeared to afford the correct measure of damages; but in the later decisions we find that it is distinctly ruled that in such cases the defendant is not limited to the valuation so stated. In *Kaufman* v. *Seaboard Air-Line Ry.,* 10 *Ga. App.* 248, 250 (73 S. E. 592), the court said: "In bail-trover where the defendant fails or refuses to replevy and keep the possession of the

goods, the plaintiff has the option of doing so. Civil Code (1910), § 5152. However, if the plaintiff thus causes the possession of the property to be transferred from the defendant to him, he stands chargeable as for a conversion of it, unless he recovers in the suit. If the case proceeds to verdict and the defendant prevails, he is entitled to take his choice of one of three forms of verdict, namely: (1) for the specific property, or (2) for the market value of the property at the date of the conversion, with the addition of hire or interest, or (3) for the highest proved value of the property between the date of the conversion and the date of the trial, without hire or interest; and if he chooses a money verdict, he may take judgment against the plaintiff and the sureties on the replvy bond for the amount assessed by the jury in his favor. *Bank of Blakely* v. *Cobb,* 5 *Ga. App.* 289 [63 S. E. 24]. The defendant has a similar option if the plaintiff's action is dismissed (*Marshall* v. *Livingston* [supra]), or if it terminates in nonsuit.. *Lauchheimer* v. *Jacobs* [supra]. The defendant in any of these events may ask for the question of value to be submitted to the jury for assessment; but, if he is content with the value sworn to by the plaintiff in his affidavit for bail, verdict is unnecessary, and he may, upon the sworn admission of the plaintiff as contained in this affidavit, take judgment against the plaintiff and his sureties for the sum stated in the affidavit, with interest thereon. See *Block* v. *Tinsley* [supra]; *Thomas* v. *Price* [supra]; *Hays* v. *Jordan,* 85 *Ga.* 741 [11 S. E. 833, 9 L. R. .A. 373]; *Jaques* v. *Stewart,* 81 *Ga.* 82 [6 S. E. 815]."

Thus, the only proposition of law which remains for our determination is whether or not the general rules of procedure, which were accurately applied by the trial judge, were applicable under the peculiar circumstances of the present case. The original contract having been shown to be unenforceable by reason of its immoral consideration, can it be properly said that the bond, authorized by law and given by the plaintiff in a legal proceeding, though based on a void contract, must likewise become so tainted as to render it also invalid, simply because the plaintiff, for good reason, failed in his suit? No matter if the suit did fail, the court had jurisdiction of the case and the suit itself was a legal one; and thus, since the proceedings taken thereunder were in accordance with law, should it be said that they too must lose their validity

simply because of the failure of the suit? But, on the other hand, to express the question in another way, can the defendant, who stands in pari delicto as to the original contract, not only defeat the plaintiff's attempt to enforce it on the ground that the law will have nothing to do with it, but actually proceed to invoke the law in her own behalf by proceeding to claim the benefit of the plaintiff's attempt, so as to recover under the plaintiff's bond a judgment for an amount exceeding all sums paid by her on the purchase of the article sued for? Counsel have not furnished us with any authority bearing upon the question thus before us. We ourselves have been unable to find any direct ruling upon the proposition involved. In 6 R. C. L. 821, we find the statement of the enforceability of independent causes of action, where related to illegal contracts, to be as follows: "Even though the parties to an action have been engaged in a transaction either malum in se or prohibited by law, yet if the cause of action between them is disconnected from the illegal act and is founded upon a distinct and collateral consideration, and the plaintiff is not obliged to resort to the illegal contract or transaction in order to maintain the suit, the illegality of the former transaction will not impair or bar the right to maintain the suit. If the contract or obligation does not depend upon or require the enforcement of the unexecuted provisions of the illegal contract, it will be carried out. Therefore, the test is, whether the contract sought to be enforced can be *separated* from the illegal acts or contracts relied upon as avoiding it, and whether the plaintiff requires any aid from or must in any way rely upon the illegal transaction in order to establish his case. As to the ability of the plaintiff to make out his cause of action without referring to the illegal contract, it may be stated that the plaintiff for such purpose can not refer to one portion only of the contract upon which he proposes to found his right of action, but that the whole of the contract must come in, although the portion upon which he founds his cause of action may be legal. But an illegal agreement made by a plaintiff will not defeat him unless his cause of action is *founded upon,* or *arises out of,* such agreement. His right to recover upon a ground of action that exists independently of the contract is not affected thereby." In the case of *Sewell* v. *Norris,* 128 *Ga.* 824 (58 S. E. 637, 13 L. R. A. (N. S.) 1118), the late Justice Lumpkin used language somewhat

similar, and quoted approvingly from Simpson v. Bloss, 7 Taunt. 246 (17 Rev. Rep. 509), as follows: "The test whether a demand connected with an illegal transaction is capable of being enforced at law is whether the plaintiff requires any aid from the illegal transaction to establish his case." Justice Lumpkin further cited the case of *Ingram* v. *Mitchell*, 30 *Ga.* 547, in which it was said that whenever the plaintiff can make out his case without invoking the illegal contract to his aid, he is entitled to recover. See also *Mechanics Realty &c. Co.* v. *Leva*, 16 *Ga. App.* 7 (84 S. E. 222). In 6 R. C. L. 825, it is said: "Where the parties are in pari delicto, no *affirmative* relief of any kind will be given to one against the other. The only equitable remedies which they can obtain are such as are *purely defensive.*" See also McClintock v. Loisseau, 31 W. Va. 865 (8 S. E. 612), and note to that case in 2 L. R. A. 816, in which many cases are cited showing that where parties are in pari delicto, no affirmative relief of any kind will be given to one against the other.

But we have reached the conclusion announced in the third headnote, mainly upon the theory that the purpose of the bond given by the plaintiff was intended to protect the defendant in the event that the title to the property sued for should be adjudged to be in the latter, and that when no such adjudication is made, the remedies under the bond are not applicable. The object sought by a suit in trover is to ascertain title. The issue involved is that of title. *Campbell* v. *Trunnell*, 67 *Ga.* 518 (4); *Berry* v. *Jackson*, 115 *Ga.* 196 (41 S. E. 698, 90 Am. St. R. 102). Accordingly, the adjudication of such a suit determines that question; and thus it is that the bond prescribed by the code for the forthcoming of the property and to answer such judgment as may be rendered, including the final condemnation money, is intended to protect the party in whom title may be adjudged against the party who may then be in possession of the property. Generally, even when the judgment in such a suit is a dismissal or nonsuit, there is still in contemplation of law, a full adjudication of the title; and for that reason the plaintiff is then liable on his bond, under the form of procedure already indicated. But we do not think that in the present case there has been any adjudication whatever as to title. The court has simply refused to allow itself to become the instrument of enforcing an obligation arising out of a contract based

upon an immoral consideration. A nonsuit was granted in this case not because the court had in any wise, even by legal consequence or implication, found contrary to the title claimed by the plaintiff, but the action taken means—and it has no other import —that the court simply would not allow itself to be used by the plaintiff, when in so doing its judgment would consummate a contract made in furtherance of an act forbidden by law. It is public policy that lies at the root of the rule which prohibits the enforcement of an illegal contract and leaves the parties where it finds them; and the rule adopted is intended for the benefit of the public and not litigants, with whose rights, under such a contract, the law does not concern itself. We do not think that because the court has washed its hands of a subject-matter in which both parties are at fault, the defendant should be permitted to recover against the plaintiff and his sureties on the bond given for the defendant's protection in the event the title should be adjudicated in her favor. And while the plaintiff's tender of the property can not be considered as being in conformity with section 4494 of the Civil Code, still we think that, in its endeavor to leave the parties where it found them, the court should have restored possession of the property to the party who had it when the suit was instituted, and should have left them thus, without attempting to administer further relief to either party. The maxim that "for every wrong there is a remedy" can, in the nature of things, have no application where courts refuse to lend themselves to the enforcement of illegal contracts; and therefore the test can not be whether exact justice would in all cases be met by the procedure herein indicated. That the court should prevent, so far as possible, injustice to parties growing out of proceedings taken within itself seems entirely reasonable; and it is upon this principle that the status obtaining before the litigation should, as near as possible, be restored. We do not think that in so doing it would transcend the powers of a court of law; as the effect of such an order would be merely to undo that which under its own procedure had been done. In a case where the property could not be restored there are other questions which might arise; but these, under the status of the case as it exists, we do not think it necessary to raise and decide.

The judgment of the court below, entering up judgment against the principal and the surety on the bond, is reversed, on condition

that the property be restored to the defendant, as tendered by the plaintiff. If this be not done within thirty days after the entry of the remittitur upon the minutes of the trial court, the judgment will stand affirmed.

*Judgment reversed, on condition. Broyles, P. J., and Bloodworth, J., concur.*